IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| CHRISTY A. MCDANIEL,<br><br>    Plaintiff,<br><br>vs.<br><br>NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,<br><br>    Defendant. | No. 5:16-CV-04082-LRR<br><br>**REPORT AND RECOMMENDATION** |

_____

The claimant, Christy A. McDaniel (claimant), seeks judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for disability insurance benefits, under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Claimant contends that the Administrative Law Judge (ALJ) erred in determining that she was not disabled.

For the reasons that follow, I recommend the District Court affirm the Commissioner's decision.

## I. BACKGROUND

Claimant was born on July 15, 1964, and was 41 years old at the time of her alleged disability onset date. (AR 74, 188).[1] Claimant has completed the eleventh grade. (AR 44). At the time of the ALJ hearing, claimant testified that she was living alone. (*Id.*). Claimant has worked as a loader material handler, front-end loader operator, and a cashier. (AR 261).

---

[1] "AR" refers to the administrative record below.

On December 23, 2012, claimant filed an application for disability benefits, alleging disability beginning October 10, 2011. (AR 15). Claimant claimed she was disabled due to a weight restriction on her left shoulder. (AR 226).

On February 11, 2014, the Commissioner denied claimant's application, and on May 16, 2014, denied her request for reconsideration. (AR 15). On February 23, 2015, an ALJ convened a video hearing at which claimant and a vocational expert testified. (AR 39). On April 7, 2015, the ALJ found claimant was not disabled. (AR 27.). On April 21, 2016, the Appeals Council affirmed the ALJ's finding. (AR 1). The ALJ's decision, thus, became the final decision of the Commissioner. 20 C.F.R. § 404.981.

On June 22, 2016, claimant filed a complaint in this court. (Doc. 3). The parties have briefed the issues, and on February 24, 2017, this case was deemed fully submitted. (Doc. 17). On the same day, the Honorable Linda R. Reade, United States District Court Judge, referred this case to me for a Report and Recommendation.

## II.     DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. An individual has a disability when, due to his/her physical or mental impairments, he/she "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. § 404.1566(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. "Substantial" activity involves significant mental or physical activities. 20 C.F.R. § 404.1572(a). "Gainful" activity is work done for pay or profit, even if the claimant does not ultimately receive pay or profit. 20 C.F.R. § 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to perform basic work activities. *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987).

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work.

3

If the claimant can still do his past relevant work, then he is considered not disabled. Past relevant work is any work the claimant performed within the past fifteen years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Id*. If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him or her to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

### III. THE ALJ'S FINDINGS

The ALJ engaged in the five-step sequential analysis outlined above, as reflected in her written decision.

At Step One, the ALJ found claimant had not engaged in substantial gainful activity since October 10, 2011, the alleged onset date. (AR 17).

4

At Step Two, the ALJ determined claimant had the following severe impairments: left shoulder rotator cuff repair with repair of torn bicep tendon; coccydynia; avulsed tendons of the right wrist; major depressive disorder; generalized anxiety disorder; and a history of attention deficit disorder. (AR 17-18). The ALJ found claimant also had chronic obstructive pulmonary disease, but the impairment was not "severe" within the meaning of the Commissioner's Regulations. (AR 18).

At Step Three, the ALJ determined claimant did not have an impairment or a combination of impairments which met or medically equaled the severity of a listed impairment in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (AR 18).

At Step Four, the ALJ determined claimant's RFC. The ALJ found claimant had the RFC to perform less than full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ determined claimant: (1) could bilaterally lift 15 pounds occasionally and less than 10 pounds frequently; (2) was limited to lifting 5 pounds frequently with her left upper extremity; (3) could sit for 2 hours in an 8-hour workday with normal breaks; (4) could never climb ladders, ropes, or scaffolds, but could frequently climb stairs and ramps; (5) could occasionally kneel, crouch, and crawl, and frequently balance and stoop; (6) could never reach overhead with the left non-dominant upper extremity; (7) could frequently, but not constantly, handle with the right dominant upper extremity; (8) could not engage in frequently push/pull activities over 10 pounds with the left upper extremity; (9) could understand, remember, and carryout short, simple instructions; and (10) could interact appropriately with coworkers and the general public on a brief and superficial basis. (AR 20).

Based on this RFC assessment, at Step Five, the ALJ determined that, although claimant could not perform any past relevant work (AR 25), there were jobs in significant numbers in the local and national economy that the claimant could perform, including bench assembler, electronics worker, and inspector/hand packager (AR 26). The ALJ concluded, therefore, that claimant was not disabled. (AR 26-27).

## IV. THE SUBSTANTIAL EVIDENCE STANDARD

A court must affirm the Commissioner's decision "'if the ALJ's decision is supported by substantial evidence in the record as a whole." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (quoting *Juszczyk v. Astrue*, 542 F.3d 626, 631 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence" is "less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Wright*, 542 F.3d at 852 (quoting *Juszczyk*, 542 F.3d at 631). The Eighth Circuit Court of Appeals has explained the standard as "something less than the weight of the evidence and allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (internal quotation omitted).

In determining whether the Commissioner's decision meets this standard, a court considers "all of the evidence that was before the ALJ, but we do not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (internal citation omitted). A court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). A court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, a court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). A court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v.*

6

*Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where a court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). A court may not reverse the Commissioner's decision "simply because some evidence may support the opposite conclusion." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (internal quotation marks and citation omitted). *See also Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion." (internal citation omitted)).

## V. DISCUSSION

Claimant argues the ALJ's decision is flawed because it did not properly evaluate treating-physician Dr. Stephen Veit's opinions regarding additional work-related limitations. (Doc. 15, at 4). Claimant specifically alleges that the evaluation was improper because it did not explicitly accept or reject each of Dr. Veit's opinions. (Doc. 15, at 7-8). For the sake of clarity, I will address this argument in two parts below. First, directly addressing the claimant's argument to the effect that each of Dr. Veit's opinions must be explicitly accepted or rejected. Second, I will address whether there was sufficient evidence to warrant rejection of Dr. Veit's opinions.

### A. *Failure to Explicitly Mention Specific Opinions of Treating Physician*

Claimant argues that the ALJ's RFC determination was in error because it did not involve proper evaluation of the opinions of Dr. Veit regarding claimant's work related limitations. Claimant specifically assigns error to the fact that the ALJ did not explicitly

7

accept or reject every opinion given by Dr. Veit. (Doc. 15, at 7-8). It is axiomatic that the ALJ is required to develop the record fully and fairly, but it is equally evident that the ALJ is not required to provide an in-depth analysis on each piece of evidence. *Renstrom v. Astrue*, 680 F.3d 1057, 1065 (8th Cir. 2012). Although "[a]n ALJ's failure to consider or discuss a treating physician's opinion that a claimant is disabled is error when the record contains no contradictory medical opinion," an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Where the ALJ has incorporated the treating physician's findings into the decision, the ALJ does not need to explicitly discuss every conclusion, but instead may implicitly reject the physician's conclusions. *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998) ("Given the ALJ's specific references to the medical findings set forth in [physician's] letter, it is highly unlikely that the ALJ did not consider and reject [the physician's] opinion that [the claimant] was disabled . . .."); *accord Hanson v. Colvin*, No. 12-CV-961 TNL, 2013 WL 4811067, at *21-22 (D. Minn. Sept. 9, 2013).

Claimant is correct in asserting that the ALJ's decision did not explicitly discuss every opinion of Dr. Veit. Claimant is wrong in asserting that this constitutes reversible error. All of the opinions of Dr. Veit which claimant specifically points to as being problematically excluded from the ALJ's decision come from the residual functional capacity questionnaires completed on February 12, 2015. *See* (Doc. 15, at 7); (AR 500-19). These questionnaires were incorporated together as "Exhibit 22F" for the purposes of the ALJ's decision. *See* (AR 500-19). The ALJ specifically referenced Exhibit 22F in her discussion of Dr. Veit's opinions. (AR 24). Not only did the ALJ generally reference Exhibit 22F, but also incorporated findings that were present in each of the questionnaires, ultimately assigning some of those opinions "some" or "less" weight. *Id*. Therefore, given the ALJ's specific references to the medical findings set forth in Exhibit 22F, "it is highly unlikely that the ALJ did not consider and reject" Dr. Veit's opinions

8

contained in those questionnaires which were not specifically referenced or incorporated. *Black*, 143 F.3d at 386.

### B. Sufficient Reasons for Implicit Rejection of Treating Physician's Opinions

Because it was not reversible error in itself to omit explicit discussion of each of Dr. Veit's opinions regarding claimant's ability to work, the ALJ's decision must be sustained so long as there were sufficient reasons to implicitly reject those of Dr. Veit's specific opinions which were not incorporated as limitations. *See Hanson*, 2013 WL 4811067, at *22 (finding that the internal inconsistencies in treating physician's opinions constituted good reason for the ALJ to implicitly reject opinions of said treating physician which were not explicitly mentioned). "A treating physician's opinion is generally given controlling weight, but is not inherently entitled to it." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006). An ALJ may reject the opinions of a treating source for a variety of reasons, such as if the treating source offers internally inconsistent opinions, offers opinions based only on subjective complaints, or offers wholly conclusory opinions. *Renstrom*, 680 F.3d at 1064-65. An ALJ may also reject the conclusions of any medical expert if they are inconsistent with the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001); *see also Goff*, 421 F.3d at 790-91 ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount the [treating physician's] opinion."). In doing so, the ALJ is not required to discuss every piece of evidence submitted. *Black*, 143 F.3d at 386. Nor does failure to cite specific evidence mean that the ALJ did not consider the uncited evidence. *Id.* When looking to the record as a whole for contradictory evidence, the ALJ is permitted to consider, *inter alia*, whether the claimant's own testimony undermines a medical opinion. *Tippie v. Astrue*, 791 F. Supp. 2d 638, 654 (N.D. Iowa 2011) (discussing that the ALJ had properly found that the claimant's testimony regarding a lack of limitations on her ability to sit undermined the treating source's opinion that claimant was limited in her ability to sit). The ALJ is also permitted to consider the opinions of other physicians

9

because the ALJ is charged with the responsibility of resolving conflicts among medical opinions. *Id.* at 653.

I find that the ALJ properly considered the record as a whole and appropriately resolved the conflicts among claimant's treating physician's opinion and the rest of the medical evidence for the reasons to follow.

Claimant first alleges that the ALJ's finding that claimant was limited to "frequent" us of her right hand and wrist to handle was in error in light of Dr. Veit's opinion that her ability to grasp, turn, and twist objects with her right hand was severely limited. (Doc. 15, at 7). To start, claimant's own testimony undermines the opinion of Dr. Veit. In generally supporting the RFC determination, the ALJ specifically pointed to claimant's own testimony about her daily activities that tended to undermine the notion that she could not perform work within the determined RFC. *See Ross v. Barnhart*, 119 Fed. App'x 791, 796 (7th Cir. 2004) ("A claimant's daily activities can be considered in determining her RFC."). Specifically, the ALJ referred to claimant's report that she lives by herself, is generally able to perform personal care needs, can perform generally most household chores, and can drive for up to an hour. (AR. 23). *See Ross*, 119 Fed. App'x at 796 (holding that claimant's testimony that she performed most of her household chores supported ALJ's conclusion that claimant could perform occasional fine manipulation). Moreover, claimant specifically noted that she "[l]ikes to do crafts" and "shoot pool." (AR 23). The ALJ further noted that claimant's "fairly exertional work" in 2012 further bolstered the RFC determination. (AR 23). Claimant even reported to Dr. Bansal, a treating-source whose opinions were assigned weight by the ALJ, that she "had to rip open all of the heavy duty trash bags with her hands and arms," "then reach into the bags to sort the items" at a "rapid pace." (AR 300-01). The ability to perform all of the aforementioned activities was arguably inconsistent with the notion that claimant's ability to use her right hand was *severely* limited.

Aside from claimant's own testimony, objective medical evidence further undermines Dr. Veit's opinion. Dr. Veit had treated claimant intermittently for various

10

Case 5:16-cv-04082-LRR-CJW   Document 18   Filed 04/03/17   Page 10 of 15

maladies, but a review of his treating notes reveal that Dr. Veit never found claimant to have functional limitations with respect to the use of her left hand. *See* (AR 36-38, 437-38, 451-67, 477-94, 540-51, 584-92). Therefore, the discrepancy between the treating records and the RFC questionnaire render Dr. Veit's opinion merely conclusory and consequently the ALJ was free to disregard it. *Rhinehart v. Astrue*, No. 4:06CV1405 SNL/TIA, 2008 WL 762095, at *14 (E.D. Mo. Mar. 19, 2008), *aff'd*, 349 Fed. App'x 119 (8th Cir. 2009). Furthermore, Dr. Bansal actually undertook a measurement of claimant's grip strength, making no mention of limitations. *See* (AR 303-04). Thus, the ALJ was again entitled to disregard Dr. Veit's opinion, because of the existence of a differing medical assessment which was supported by better and more thorough medical evidence. *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000). In sum, claimant's own testimony, the conclusory nature of Dr. Veit's opinion itself, and Dr. Bansal's evaluations all undermined Dr. Veit's opinion, constituting sufficient reason for discounting Dr. Veit's opinion regarding limitations of claimant's right hand and wrist.

Claimant next argues that the ALJ's finding in regards to the limitations on claimant's left hand were in error because the ALJ did not incorporate Dr. Veit's opinion that clamant was not able to perform fine manipulations. (Doc. 15, at 7). For the exact same reasons relating to the ALJ's limitations on claimant's right hand, I find that there was sufficient reason to support the ALJ's rejection of Dr. Veit's opinion regarding claimant's left hand.

Claimant next argues that, although the ALJ's finding reflected Dr. Veit's opinion that claimant was limited to sitting for two hours and standing for six hours in an eight-hour work day, the ALJ erred by not also including Dr. Veit's opinions about further limitations on claimant's ability to sit and stand. (Doc. 15, at 7). It was Dr. Veit's opinion that claimant also had to alternate her position from being seated every 15 minutes, and alternate her position from standing every one hour. (AR 501). Dr. Veit was also of the opinion that claimant must have been permitted to shift positions at will from sitting, standing, or walking. (AR 502).

Claimant's own testimony is again in conflict with Dr. Veit's opinion. The ALJ specifically pointed to claimant's testimony that she could drive for up to an hour before needing to stand to alleviate pain was a factor in the RFC determination. (AR 23, 457). This testimony was directly inconsistent with Dr. Veit's opinion regarding the ability to sit and the need to shift frequently. Additionally, claimant reported to Dr. Zhu that she "stand[s] while working as a cashier for 11 hours straight with no break." (AR 555). Claimant even corroborated this testimony directly to Dr. Veit during a visit for foot pain, as his notes explicitly state that claimant "stands on her feet all day working as a cashier at a convenience store." (AR 585). Needless to say, the ability to stand for eleven hours straight without a break is wildly inconsistent with the notion that claimant had further limitations on her ability to stand or needed to shift frequently.

Dr. Veit's opinion is also internally inconsistent with his own treatment notes. In discussing claimant's tailbone and back pain, the ALJ referred to Dr. Veit's statement that an x-ray of claimant reflected normal findings and physical examinations show that she had a normal gait. (AR 22). In fact, x-ray results of claimant's sacrum and coccyx, incorporated into Dr. Veit's progress notes, explicitly state that claimant's alignment "appear[ed] normal," there were "[n]o fractures," and there was "no acute osseous process detected." (AR 467). Dr. Veit also noted that the claimant denied excessive weakness generally, and denied any pain or weakness musculoskeletally. (AR 544). Furthermore, Dr. Veit had specifically recommended that the claimant engage in regular aerobic activity at least 4 times per week. (AR 546). *See also Barrows v. Colvin*, No. C 13-4087-MWB, 2015 WL 1510159, at *16 (N.D. Iowa Mar. 31, 2015) (noting that a medical professional's encouragement of a claimant to exercise demonstrate that the claimant retains her physical and mental capability to perform light work). All of the aforementioned notes are arguably inconsistent with Dr. Veit's opinion, constituting grounds for the ALJ to disregard it. *Renstrom*, 680 F.3d at 1064.

It is also worth noting that, much like the opinions regarding hand limitations, there was nothing in Dr. Veit's treatment records or the RFC questionnaire to lend any

12

Case 5:16-cv-04082-LRR-CJW  Document 18  Filed 04/03/17  Page 12 of 15

sort of objective support to his opinion here. Dr. Veit never imposed any limitations on claimant's ability to sit or stand during his course of treatment. Thus, the opinion was also conclusory and the ALJ was entitled to disregard it on this ground as well. *Prosch*, 201 F.3d at 1013. In sum, claimant's own testimony is grossly inconsistent with Dr. Veit's opinion, and Dr. Veit's opinion is further undermined by his own contradicting treatment notes, and the conclusory nature of the opinion itself. As a result, sufficient reason existed to support the ALJ's rejection of Dr. Veit's opinion regarding claimant's ability to sit and stand.

Claimant next argues that the ALJ erred by not including Dr. Veit's opinion that claimant needed unscheduled breaks through an eight-hour work day. (Doc. 15, at 7). For the exact same reasons relating to the ALJ's limitations on claimant's ability to sit and stand, I find there was sufficient reason to support the ALJ's rejection of Dr. Veit's opinon regarding claimant's need to take unscheduled breaks.

Claimant finally argues that the ALJ erred by not including Dr. Veit's opinion that claimant's pain was severe enough to "frequently" interfere with her attention and concentration to perform simple tasks. (Doc. 15 at 7). Yet again, claimant's own testimony starkly contrasts with Dr. Veit's opinion. Claimant stated that she could drive for up to an hour before needing to alleviate her pain. (AR 23). Claimant also lived by herself and was generally able to perform personal care needs and could perform generally most household chores. (AR 23). Claimant also "[l]iked to do crafts" and "shoot pool." (AR 23). Claimant also stood for eleven hours at a time while performing her job as a cashier at a convenience store. (AR 555, 585). In addition, the ALJ noted that she factored into the RFC the fact that the record did not show that claimant took, nor was she prescribed, ongoing pain medication besides over-the-counter ibuprofen. The ALJ explained that this weighed against the allegations of severe pain because one would expect more aggressive pain treatment given the claimants complaints of pain. (AR 22). *See Walker v. Colvin*, 124 F. Supp. 3d 918, 934 (E.D. Mo. 2015) ("An ALJ may consider a [claimant's] conservative course of treatment as indicative that his

13

symptoms are not disabling."). Similarly, to the ALJ's explicit observation, Dr. Veit himself proscribed a single injection to alleviate claimant's pain. *Olsen v. Colvin*, 551 Fed. App'x 868, 875 (7th Cir. 2014) (holding that back pain injections have been characterized as "conservative treatment") (citing *Singh v. Apfel*, 222 F.3d 448, 450 (8th Cir.2000)). All of the aforementioned factors were inconsistent with Dr. Veit's opinion.

Once again, Dr. Veit's treatment records and his opinion are also internally inconsistent. As has already been noted, Dr. Veit noted that an x-ray of claimant's back/tailbone were normal. (AR 457). In response to this conclusion, he recommended a conservative course of treatment of one injection of the affected area. (*Id.*). Dr. Veit later recommended that claimant engage in regular aerobic activity at least four times a week. (AR 546). Furthermore, Dr. Veit's opinion is also arguably conclusory. Although Dr. Veit did discuss claimant's pain with her on a number of occasions, there is no support in the record in which he noted any sort of effects, let alone 'frequent' effects, that pain would have on claimant's concentration. In light of the lack of support for Dr. Veit's opinion, coupled with internal inconsistencies in his own treatment records and glaring inconsistencies in the record as a whole, the ALJ was sufficiently justified in disregarding the opinion.

## *VI. CONCLUSION*

For the reasons set forth herein, I respectfully recommend the District Court **affirm** the Commissioner's determination that claimant was not disabled, and enter judgment against claimant and in favor of the Commissioner.

Parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and FED. R. CIV. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* FED. R. CIV. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the district

court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 3rd day of April, 2017.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa